UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor, | *<br>*<br>*  CIVIL ACTION<br>* |
| Plaintiff, | *  No. 21-550<br>* |
| v. | *<br>* |
| RIVET & SONS, LLC,<br>GLYNN J. RIVET, Individually,<br>BRENT RIVET, Individually and<br>CLINTON RIVET, Individually | *<br>*<br>*<br>* |
| Defendants. | |

# COMPLAINT

1.      Plaintiff Martin J. Walsh, Secretary of Labor (Secretary), United States Department of Labor (DOL), brings this action pursuant to 8 U.S.C. § 1188(g)(2), 20 C.F.R. § 655.135(h), 29 C.F.R. § 501.4, and 29 C.F.R. §§ 501.16(b)-(c) seeking to enjoin Defendants Rivet & Sons, LLC (Rivet LLC), Glynn Rivet, Brent Rivet, and Clinton Rivet (collectively, Defendants) from violating the anti-retaliation provisions of the DOL's regulations implementing the H-2A provisions of the Immigration and Nationality Act (INA), 8 U.S.C. § 1188, related to Defendant Rivet LLC's employment of fourteen temporary agricultural workers (hereafter referred to as H-2A workers), and to further compel Defendants to take all actions necessary to ensure the safety of Defendant Rivet LLC's current and future H-2A workers by protecting them from potential violence and from the deprivation of potable water and restroom and washing facilities.

## I.

## JURISDICTION

2. Jurisdiction of this action is conferred upon the Court by 28 U.S.C. §§ 1331 and 1345; 8 U.S.C. 1188(g)(2); and 29 C.F.R. § 501.16(b) and (c).

## II.

## VENUE

3. Venue is proper as a substantial part of the events or omissions giving rise to the claim occurred within Pointe Coupee and Iberville Parishes, Louisiana.

## III.

## DEFENDANTS' FARMING OPERATION AND CORPORATE STRUCTURE

4. Defendant Rivet LLC is a limited liability company formed under the laws of Louisiana in November 2019 that farms sugarcane and soybeans and operates in Iberville and Pointe Coupee Parishes within the jurisdiction of this Court.

5. Defendant Glynn Rivet was and has been an officer, manager, and part owner of Rivet LLC and managed its business affairs on a daily basis with his sons, Defendants Clinton (Clint) Rivet and Brent Rivet, until at least June 9, 2021.

6. On June 17, 2021, Glynn Rivet "gifted" all of his ownership interest in Rivet LLC to his two sons, Clint Rivet and Brent Rivet, leaving them as 50/50 owners of Rivet LLC. Rivet LLC is located at 1720 and/or 1732 Val Verde Road, Maringouin, Louisiana where it conducts business.

7. Defendant Glynn Rivet, an individual, actively managed, supervised and directed the business affairs and operations of Defendant Rivet LLC until at least June 9, 2021.

8. Defendant Brent Rivet, an individual, actively manages, supervises, and directs the

business affairs and operations of Defendant Rivet LLC.

9.  Defendant Clinton Rivet, an individual, actively manages, supervises, and directs the business affairs and operations of Defendant Rivet LLC.

## IV.

## DEFENDANT RIVET LLC'S EMPLOYMENT OF H-2A WORKERS

10. Defendant Rivet LLC hires foreign workers under the H-2A provisions of the INA, 8 U.S.C. § 1101, e*t seq*., which authorizes the lawful admission of temporary, nonimmigrant workers to perform agricultural labor or services of a temporary or seasonal nature (hereafter referred to as H-2A or the H-2A program). To hire H-2A workers, an employer must first seek from DOL a certification that there are insufficient able, willing, and qualified U.S. workers to perform the needed labor or services. 8 U.S.C. § 1188; 20 C.F.R. 655 subpt. B; 29 C.F.R. part 501. Pursuant to these authorities, Defendant Rivet LLC filed an Application for Temporary Employment Certification (TEC) with DOL. Defendant Rivet LLC was approved to hire 15 H-2A agricultural workers to farm sugarcane and soybeans from March 15, 2021 until January 15, 2022, at its nine farms located in Iberville and Pointe Coupee Parishes. Among these H-2A workers were four men from Mexico – Juan Carlos Diaz Martinez, Julio Caesar Diaz Martinez, Raul Rivera Lopez, and Leonel Saul Silva-Ibarra (Complainants).

11.  As an H-2A employer, "during the period of employment that is the subject of the Application for Temporary Employment Certification, the employer must comply with all applicable Federal, State, and local laws and regulations, including safety and health laws." 20 C.F.R. § 655.135(e). Such laws include OSHA's Field Sanitation standard found at 29 C.F.R. § 1928.110, as well as federal, state, and local criminal laws. The Field Sanitation standard requires potable water which is accessible to all employees, and which is "suitably cool and in sufficient

amounts, taking into account the air temperature, humidity and the nature of the work performed, to meet the needs of all employees." 29 C.F.R. § 1928.110(c)(1)(i) and (ii). Toilet and handwashing facilities are also required to be provided. 29 C.F.R. § 1928.110(c)(2). In addition, an H-2A employer "either must provide each worker with three meals a day or must furnish free and convenient cooking and kitchen facilities to the workers that will enable the workers to prepare their own meals." 20 C.F.R. § 655.122(g). Rivet LLC chose to satisfy this obligation by providing kitchen facilities that enabled the workers to prepare their own meals, including bringing their lunches to the field. The Department's H-2A regulations further prohibit any "person" from retaliating against any person who has engaged in certain protected activities under the H-2A program. 29 C.F.R. § 501.4.

## V.

## DEFENDANTS' UNLAWFUL RETALIATION AGAINST H-2A WORKERS

12. On June 28, 2021, DOL's Wage and Hour Division (Wage Hour) received a complaint from the United States Consulate, Fraud Protection Unit (FPU), in Monterrey, Mexico stating:

> On June 16, 2021, FPU Monterrey received phone calls, emails, and video evidence of Glynn Rivet, owner of Rivet & Sons LLC, threatening workers with a gun, allegedly in response to workers asking for more food and for a water faucet to be moved back closer to their living quarters. According to one worker, they asked Mr. Rivet for more food and water, and after he did not provide anything, they brought their concerns to his son. At that point, Mr. Rivet responded by insulting them and threatening them with a gun, shooting twice into the air. At least three workers decided to leave the work site and file a police report.

The U.S. Consulate also provided Wage Hour with a video recording of Glynn Rivet verbally and physically threatening workers by yelling profanities at them and brandishing and firing two pistols in close proximity to several of his H-2A workers.

13.     The Wage Hour investigation revealed that during their employment, the H-2A workers faced grueling conditions working in hot and humid weather, often seven days a week depending on the weather, ten or more hours a day, in fields that lacked potable drinking water and toilet and handwashing facilities.

14.     On June 7, 2021, the four Complainants were working together in a field with limited water and no toilets or handwashing facilities. After working nearly three hours, the Complainants asked Glynn Rivet for water while they were working in the field. Instead of providing the water, Glynn Rivet told the Complainants to drink from the ditch. From that point and the following day, Glynn Rivet subjected them to hostile and retaliatory treatment. After they requested water, Glynn Rivet hovered over them to discourage them from taking breaks or stopping to look for water. Later on June 7, 2021, the Complainants called Clint Rivet and asked him to bring them water. Clint Rivet did bring them water at about noon that day, but the amount of water he provided (two to three gallons for four men for five hours) was insufficient for the Complainants considering the heat, type, and duration of their work.

15.     The following day, June 8, 2021, Glynn Rivet continued his retaliatory actions toward the Complainants, intentionally depriving them of food and water. Immediately after arriving at the fields at around 7:00 a.m. on June 8, 2021, Glynn Rivet instructed the Complainants to get in his truck and told them not to get their lunches or water because they wouldn't need them. He transported them to a field that was particularly difficult to work and could not be accessed by bus. Glynn Rivet dropped off Complainants, and as he was driving away he yelled, "I am the one with the power here." After a few hours, Clint Rivet picked up Complainants and brought them to where the other workers were working, which was near the bus containing their food and water. However, as soon as they got there, Glynn Rivet instructed Clint Rivet to take Complainants to a

different field about a mile and a half away from the other group before the Complainants had a chance to get their food and water off the bus. At one point after being dropped off, they called a co-worker who was near the bus to see if they could get access to their food and water, but they did not have the key to the bus. Between 12:45 p.m. and 1:00 pm, Complainants called Brent Rivet and asked where he was and if he could assist in getting their food and water. Brent Rivet said he was far away but would see what he could do. After exhausting their immediate means of trying to get access to their food and water, Complainants started walking the 1.5 miles to the bus for food and water.

16. While walking toward the bus, the Complainants heard shouting between Brent and Glynn Rivet and then, a gunshot. Immediately after the gunshot, they saw Glynn Rivet speeding toward them in his truck with five other H-2A workers in the bed. Believing they were in danger, the Complainants pulled out their cell phones and began to videotape what was happening. When Glynn Rivet pulled up, one of the Complainants had to quickly jump out of the way to avoid being hit by the mirror of the truck. Glynn Rivet got out of his vehicle with two pistols – one in each hand – and started screaming, cursing, and pointing the pistols at the terrified Complainants. Glynn Rivet screamed that he was furious with the Complainants because they called Brent Rivet requesting food and water. In the middle of his tirade, Glynn Rivet fired at least two shots – one in the air and one at the ground in front of the Complainants.

17. After the tirade, Glynn Rivet drove off and the Complainants immediately called the police. The Pointe Coupee Sheriff's Department responded and after taking a statement that all four Complainants signed, Glynn Rivet was charged with four felony counts of aggravated assault with a firearm and one count of illegal use of weapons or dangerous instrumentalities.

18.     After talking with the Sheriff's Department, the Complainants went to the bunk houses where they remained for five days without working because they were afraid of Glynn Rivet. During these five days, Clint Rivet retaliated against the Complainants for filing a police report. He told them they "had to drop the charges" and threatened that if they refused, the work on the farm would come to an end for *everyone*. They refused. Thereafter, one of their H-2A coworkers came to talk to them and told them the boss would pay them money through the end of the contract and they would be able to work anywhere in the United States if they dropped the charges. They again refused. Subsequently, one of the Complainants recanted the statement he had given to the Sheriff's Department and returned to work for Rivet LLC. During this time Clint Rivet approached Complainants and explained that if they weren't going to work they had to leave, which they did.

19.     On or about June 13, 2021, the remaining three Complainants, who out of fear for their safety, fled the Rivet Farm. However, there are 11 H-2A workers who continue to perform agricultural work for Rivet LLC.

## VI.

### DEFENDANTS' UNLAWFUL RETALIATION VIOLATES
### THE ANTI-RETALITION PROVISIONS OF H-2A

20.     DOL's H-2A regulations prohibit retaliation by any "person" against any person who has exercised rights protected under the H-2A program. 29 C.F.R. § 501.4.  Specifically, the regulations provide:

> A person may not intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against any person who has:
> (1) Filed a complaint under or related to 8 U.S.C. 1188 or the regulations in this part;
> (2) Instituted or caused to be instituted any proceedings related to 8 U.S.C. 1188 or the regulations in this part;

>  (3) Testified or is about to testify in any proceeding under or related to 8 U.S.C. 1188 or the regulations in this part;
>  (4) Consulted with an employee of a legal assistance program or an attorney on matters related to 8 U.S.C. 1188, or to this subpart or any other Department regulation promulgated pursuant to 8 U.S.C. 1188; or
>  (5) Exercised or asserted on behalf of himself or others any right or protection afforded by 8 U.S.C. 1188 or the regulations in this part.

*Id*. *See also* 20 C.F.R. § 655.135(h) (when filing Application for Temporary Employment Certification, employer must assure that it "has not and will not intimidate, threaten, restrain, coerce, blacklist, discharge or in any manner discriminate against, and has not and will not cause any person to intimidate, threaten, restrain, coerce, blacklist, or in any manner discriminate against, any person who has" engaged in activity protected under the H-2A program).

### A.  PROTECTED ACTIVITY

21.  During the period beginning June 7, 2021, through the present, Defendants have violated and are violating the anti-retaliation provisions of the H-2A program. Specifically, Defendants have retaliated against the Complainants for engaging in numerous activities protected under the H-2A anti-retaliation provisions at 29 C.F.R. § 501.4(a) and 20 C.F.R. § 655.135(h), both of which protect complainants who file complaints related to the H-2A program (29 C.F.R. § 501.4(a)(1) and 20 C.F.R. 655 § 135(h)(1)) or assert any rights or protections afforded to them by the H-2A program (29 C.F.R. § 501.4(a)(5) and 20 C.F.R. § 655.135(h)(5)).  When the Complainants requested food and water, they were asserting rights afforded to them by 20 C.F.R. § 655.135(e), which requires compliance with health and safety laws including OSHA's Field Sanitation standard at 29 C.F.R. § 1928.110, which requires employers to provide accessible potable water, and by 20 C.F.R. § 655.122(g), under which Defendant Rivet LLC was required to provide the workers with three meals a day. When the Complainants called the police and provided statements to report Glynn Rivet's violent threats with guns, their actions were protected by 29

C.F.R. § 501.4(a)(1) and 20 C.F.R. § 655.135(h)(1).

## B. ADVERSE ACTIONS

22. Complainants suffered adverse actions prohibited by 20 C.F.R. 655.135(h) and 29 C.F.R. 501.4(a), including threats, intimidation, coercion, and ultimately constructive discharge. Defendants' egregious retaliatory action included the denial of food and water, threatening the safety of the Complainants, and coercing the Complainants to withdraw their statements in the criminal case against Glynn Rivet by threatening that if they did not do so, the farm would be shut down and all the H-2A workers would be left without a job.

23. The three Complainants who refused to recant their statements to the police were constructively discharged. The Complainants' visa status made them vulnerable to exploitation by their employer. Because the Complainants were H-2A workers, their choices were limited because they were not free to seek other employment in the United States. Their visas were tied to the TEC filed by Rivet LLC and these workers were thus authorized only to work at the sugarcane and soybean farm for Rivet LLC from March 15, 2021 until January 15, 2022. In sum, they were trapped with only two choices: stay or go. If they stayed on the farm, they could suffer serious medical consequences from the lack of adequate food and water and be subjected to threats, violence, and intimidation. If they went, they would lose their H-2A status and employment. Juan Carlos Diaz Martinez, Julio Caesar Diaz Martinez, and Raul Rivera Lopez chose the latter and suffered constructive discharge to avoid further acts of violence.

## C. CAUSAL CONNECTION BETWEEN PROTECTED ACTIVITY AND ADVERSE ACTION

24. A causal connection exists between Complainants' protected activities and Defendants adverse actions. Defendant Glynn Rivets' words and conduct in response to the Complainants' requests for water provide direct evidence of causation, such as telling the workers

to "drink from the ditch" in response to their request for water and ultimately shooting his guns around workers when he learned that workers had requested food and water from Brent Rivet.

25. In addition, a causal connection is evident based on knowledge, proximity in time, and expressed animus. Defendants knew that the Complainants engaged in protected activity when they asked for water and/or food because the Complainants expressly requested water and/or food from Glynn, Clint, and Brent Rivet. All the Defendants knew that the Complainants called the police because Glynn Rivet was charged with felony and misdemeanor violations. Clinton Rivet knew that three of the Complainants refused to recant their statements to the police.

26. There was also close proximity in time between the Complainants' protected activities and the adverse actions. Glynn Rivet's refusal to provide food and water followed immediately after the Complainants' requests for such. His tirade on June 8, 2021, occurred within a very short period of time after he learned that the Complainants had called Brent asking for food and water. Clint Rivet's demand that they Complainants recant their statements occurred within days after the Complainants had filed a complaint with the police, and the Complainant's were constructively discharged within five days of the events of June 8, 2021.

27. The Defendants also expressed animus toward the Complainants for engaging in protected activities. Glynn Rivet showed extreme animus and hostility toward the Complainants' requests for food and water, including directing them to drink water out of a ditch and screaming obscenities at the Complainants while pointing guns at them and firing the guns in their presence. Finally, Clint Rivet pressured and coerced the Complainants to recant their statements to the Sheriff, telling them that all the H-2A workers would lose their jobs if they refused.

## VII.

## CHILLING EFFECT AND ON-GOING VIOLATIONS

28. As a result of Defendants' actions, a reasonable person would be dissuaded from engaging in activities protected under the Act, such as exercising or asserting on behalf of themselves or others any right or protection afforded by 8 U.S.C. § 1188 or the regulations, or making a complaint to Defendants or Wage Hour or other government agency alleging a violation of H-2A or a related violation of criminal law.

29. Defendant Rivet LLC also continues to violate the H-2A provisions by failing to comply with the field sanitation standards as set forth in 29 C.F.R § 1928.110 in each field where its H-2A workers are working, including providing sufficient and suitably cool potable drinking water that meets the needs of all such workers present, as well as individual drinking cups, and toilet and handwashing facilities (and soap) as required by the standard.

## VIII.

## PRAYER FOR RELIEF

WHEREFORE, cause having been shown, Plaintiff seeks judgment against Defendants and for an Order to:

1. Enjoin all Defendants and anyone acting on their behalf from intimidating, threatening, restraining, coercing, blacklisting, discharging, or in any manner discriminating against any person who has engaged in any protected activity under 29 C.F.R. § 501.4(a) and 20 C.F.R. § 655.135(h);

2. Enjoin all Defendants and anyone acting on their behalf from intimidating, threatening, restraining, coercing, blacklisting, discharging, or in any manner discriminating against any H-2A worker, or their family, who cooperates with or has any involvement in the

ongoing DOL investigation.

3. Enjoin and restrain Glynn Rivet from communicating directly or indirectly with any of Rivet & Sons, LLC's current, former, and prospective H-2A workers;

4. Enjoin and restrain Glynn Rivet from being within 1,500 feet of any of Rivet & Sons, LLC's current, former, and prospective H-2A workers;

5. Enjoin and restrain Glynn Rivet from carrying any firearm within 5,000 feet of any of Rivet & Sons, LLC's current, former, and prospective H-2A workers;

6. Enjoin and restrain Glynn Rivet from entering onto the land and property at 1720 and 1732 Val Verde Road, Maringouin, Louisiana, which is where the H-2A workers are housed in bunk houses;

7. Require Defendant Rivet LLC to take all steps necessary to ensure that Glynn Rivet does not communicate directly or indirectly with, come within 1,500 feet of, or carry any firearm within 5,000 feet of any of Rivet LLC's current, former, or prospective H-2A workers, and to ensure that Glynn Rivet does not enter onto the land and property at 1720 and 1732 Val Verde Road, Maringouin, Louisiana, which is where the H-2A workers are housed in bunk houses;

8. Require Defendant Rivet LLC to take any and all other steps necessary to ensure its workers are safe from Glynn Rivet, including installing new locks and deadbolts on the exterior doors of the bunk houses or re-keying the existing locks, and providing keys to the H-2A workers;

9. Require Defendant Rivet LLC to comply with the field sanitation standards as set forth in 29 C.F.R § 1928.110 in each field where its H-2A workers are working, including providing sufficient and suitably cool potable drinking water that meets the needs of all such workers present, as well as individual drinking cups, and toilet and handwashing facilities (and soap) in the ratios, locations, and conditions required by the standard;

10. Require Defendant Rivet LLC, within five days of the requested Order, to advise the H-2A workers of their rights under H-2A by prominently posting WH Fact Sheet 1491 (English version) and WH Fact Sheet 1490 (Spanish version) on all exterior doors of the bunk houses where the H-2A workers are housed as mandated by 20 C.F.R § 655.135(l).

11. Require Defendant Rivet LLC, within five days of entry of the requested Order, to post a notice on all exterior doors of the bunk houses in both English and Spanish, and to read aloud to the H-2A workers both in English and in Spanish, the following statement:

> As an H-2A worker, you are protected by the H-2A visa statute and regulations and have the right to freely participate in the U.S. Department of Labor's investigation into your employer's practices. You have the right to speak freely and honestly with investigators or other officials from the Department of Labor, and your employer is prohibited from retaliating against you in any way because you spoke with or cooperated with the Department of Labor. The Department of Labor will keep your statement confidential to the fullest extent allowed by law. If you have any concerns or wish to speak with the Department of Labor, you can call Wage and Hour Investigator Derek Madison at (504) 453-0406. The investigator speaks Spanish.
>
> Como trabajador del programa de H-2A estas protegido por el estatuto y las regulaciones y tienes el derecho a participar libremente en la investigación realizado por el Departamento de Trabajo con respecto a las practicas del empleador tuyo. Tienes derecho a hablar libremente y honestamente con investigadores y otros oficiales del Departamento de Trabajo y tu empleador está prohibido de tomar represalias en tu contra por haber hablado o cooperado con El Departamento de Trabajo. El Departamento de Trabajo va mantener tu declaración confidencial al grado máximo permitido por la ley. Si tienes preocupaciones o quieres hablar con el Departamento, puedes llamar al Investigador de Horas y Salarios Derek Madison a (504)-453-0406. El investigador habla español.

12. Require Defendants to compensate Complainants for all damages, including but not limited to lost wages with interest, attorney's fees, travel and lodging expenses, any other costs associated with their constructive discharge, and any other compensatory or pecuniary damages they suffered as a result of Defendants' retaliatory actions;

13. Award the Secretary all costs of this action; and

14. Award any other relief that the Court deems necessary and appropriate.

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

JOHN RAINWATER
Regional Solicitor

| | |
|---|---|
| CONNIE M. ACKERMANN<br>Deputy Regional Solicitor | UNITED STATES OF AMERICA, by |
| MARGARET TERRY CRANFORD<br>Counsel for Wage & Hour | ELLISON C. TRAVIS<br>ACTING UNITED STATES ATTORNEY |
| */s/Dolores G. Wolfe*<br>DOLORES G. WOLFE<br>Trial Attorney<br>Texas Bar No. 00794323<br>wolfe.dolores@dol.gov | */s/ Davis Rhorer, Jr.*<br>Davis Rhorer, Jr., LBN 37519<br>Assistant United States Attorney<br>777 Florida Street, Suite 208<br>Baton Rouge, LA 70801<br>Telephone: (225) 389-0443<br>Cellphone: (225) 326-5710 |
| U. S. Department of Labor<br>Office of the Solicitor<br>525 Griffin Street, Suite 501<br>Dallas, Texas 75202<br>Telephone (972) 850-3129<br>Facsimile (972) 850-3101 | Facsimile: (225) 389-0685<br>E-mail: davis.rhorer@usdoj.gov<br><br>*Local Counsel* |