UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**MARTIN J. WALSH,**

    **Secretary of**
    **Labor, United States Department of**
    **Labor,**

**Plaintiff,**

v.

**RIVET & SONS, LLC,**
**GLYNN J. RIVET, Individually,**
**BRENT RIVET, Individually and**
**CLINTON RIVET, Individually**

**Defendants.**

**CIVIL ACTION**

**No. 21-550-JWD-SDJ**

### DEFENDANTS' MOTION FOR STAY OR ALTERNATIVELY TO DISMISS FOR FAILURE TO STATE A VIABLE CLAIM FOR RELIEF

**MAY IT PLEASE THE COURT:**

Defendant, Rivet & Sons, LLC ("Rivet & Sons"), and individual Defendants, Brent and Clinton ("Clint") Rivet (collectively "Defendants" or "Rivet & Sons"), appearing through undersigned counsel and without waiving and expressly preserving all rights, motions and defenses, respectfully submit this Motion for Stay or Alternatively to Dismiss the Complaint filed by Plaintiff, Martin J. Walsh (the "Secretary"), Secretary of the U.S. Department of Labor (the "DOL").

Despite having convened an initial conference and initiated an investigation into the validity of the very allegations the Secretary now asserts in his lawsuit, the Secretary never convened a final conference, never issued findings, and refused to afford Rivet & Sons the opportunity to resolve the Secretary's grievances through the administrative process before

1

prematurely filing this action. Indeed, the Secretary filed this action before ever even visiting the Rivet & Sons worksite to determine the legitimacy of the allegations his office now makes.[1]

Since the Secretary filed this enforcement action, the DOL's Wage & Hour Division (the "WHD") has continued its ongoing investigation into the Secretary's allegations. This administrative process has resulted in the amicable resolution of each of Plaintiff's claims against Rivet & Sons, with the exception of the Secretary's allegation that Rivet & Sons retaliated against some of its H-2A employees in violation of 29 C.F.R. § 501.4, as the Secretary's administrative investigation into this claim remains ongoing.[2] Because the Secretary's investigation into this allegation remains ongoing, no findings have been issued, no final conference has been convened, and Rivet & Sons has not been afforded the opportunity to voluntarily and amicably resolve the Secretary's allegations through the administrative process, as contemplated by the WHD's Field Operating Handbook. The Secretary's Complaint is premature and should be stayed pending the outcome of the administrative process.

But even if the Secretary had complied with his own Department's promulgated procedures, the Secretary's Complaint nevertheless fails to state a claim for relief. Because Glynn Rivet's conduct fell well-outside the scope of his former employment with Rivet & Sons, did not result in a tangible employment action, and Glynn Rivet was immediately withdrawn from Rivet & Son's corporate structure, his *ultra vires* behavior is not attributable to Rivet & Sons. Moreover, the Secretary's Complaint fails to point to any activities in which any H-2A employee engaged

---

[1] As Rivet & Sons explained in its Opposition to the Secretary's Motion for Temporary Restraining Order and Preliminary Injunction, Rivet & Sons repeatedly invited the Wage & Hour Division (the "WHD") to visit the worksite to determine whether any of the allegations made in this litigation were true. Despite this offer, the Secretary filed suit without first coming to the worksite. *See* R. Doc. 12.

[2] *See* R. Doc. 32 at 1 (Secretary's explanation of the case, noting that the only remaining claim is the alleged H-2A retaliation claim), 2 (same), 3 (Secretary's statement that the Secretary "is in the process of obtaining information from the relevant employees needed to calculate Complainant's damages that resulted from the alleged retaliation").

2

that may legally be considered activity "protected" by the H-2A program attributable to Rivet & Sons. Finally, the three H-2A workers' independent decision not to return to work following the June 8, 2021 incident likewise cannot be considered retaliation. These workers were asked to return to work after being absent from the worksite for over a week, and three of the four workers chose not to return. At that point, Rivet & Sons was legally obligated to report their decision to resign from their employment to the DOL, as the H-2A program requires after a sustained absence from work. Accordingly, should this Court determine a stay of this litigation is not appropriate, Rivet & Sons respectfully submits that the Secretary has failed to state a viable H-2A retaliation claim, and his Complaint should be dismissed with prejudice.[3]

## I.    BACKGROUND[4]

On June 7, 2021, four of Rivet & Son's H-2A workers were performing their duties farming one of Rivet & Son's fields.[5] After performing three hours of work, these four H-2A workers requested additional water from Defendant Glynn Rivet, Brent and Clint Rivet's father.[6] According to the Secretary, Glynn refused.[7] Eventually, these four H-2A workers reached out to Clint for water, and Clint brought the workers additional water around noon.[8] Thereafter, the workers completed their work day without issue.[9]

The next day, Glynn allegedly instructed the same four H-2A workers to get in his truck and to leave their lunches and bottles of water behind.[10] After dropping the workers off at their

---

[3] Should this Court dismiss the Secretary's remaining allegation, Rivet & Sons respectfully requests that the Court further order the WHD to immediately terminate its investigation into these allegations and issue a finding of no violation.

[4] Rivet & Sons accepts the Secretary's allegations as true for purposes of this Motion only.

[5] R. Doc. 1 at ¶ 14.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at ¶ 15.

3

worksite, Glynn drove away leaving these four workers to complete their work.[11] After a few hours, Clint arrived and drove these H-2A workers back to their lunches and water.[12] Glynn then instructed Clint to bring these four workers to a different field to work.[13] After being brought to this second worksite, at approximately 12:45 p.m., the four workers contacted Brent Rivet, asking Brent for their water and lunches.[14] Brent retrieved their food and drinks and headed toward the worksite.[15]

Upon learning that Brent was on his way to bring these four H-2A workers their water and lunches, Glynn began shouting at Brent, brandished a gun, and shot the gun in Brent's vicinity.[16] Glynn then got back into his truck and began driving towards the four H-2A workers Brent had been on his way to assist.[17] Upon encountering these workers, Glynn got out of his truck holding two pistols and began to shout at the workers for "calling Brent and tattling,"[18] referring to both Brent and Clint as "no f***ing good" and cursing his sons' names for approximately two full minutes.[19] After firing his weapon into the nearby field, Glynn got back into his truck and drove away.[20] Thereafter, the four H-2A workers called the police and reported Glynn for his having threatened them with a firearm and subsequently discharging that firearm into the ground.[21] Glynn was arrested approximately fifteen minutes later and charged with four felony counts of aggravated assault with a firearm and illegal use of weapons or dangerous instrumentalities.[22]

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.* at ¶ 16.
[17] *Id.*
[18] *Id.*; R. Doc. 3-2, Attachment "C."
[19] R. Doc. 3-2, Attachment "C."
[20] R. Doc. 1 at ¶ 16.
[21] *Id.* at ¶ 17.
[22] *Id.*

4

Following these events, the four workers involved in the incident did not report for work for a full week.[23] Consistent with the H-2A regulations upon which these workers' visas are contingent, Clint explained to the workers that they could either depart early from their employment with Rivet & Sons or they could continue to work.[24] Three of the four H-2A employees chose to depart early, while the fourth returned to work for Rivet & Sons.[25]

Upon learning of Glynn's outrageous conduct, Clint and Brent took immediate steps to remove Glynn from both ownership and management of Rivet & Sons. Specifically, on June 17, 2021, Glynn was formally withdrawn from Rivet & Sons, gifting his fifty-one percent controlling interest to Brent and Clint, who became fifty/fifty owners of the company.[26] That same day, June 17, 2021, Glynn resigned as Manager of Rivet & Sons, LLC "effective immediately," and Clint and Brent were "elected and appointed as the sole Managers of the Company."[27] As a result, and in direct response to Glynn's criminal actions, which plainly fell outside the course and scope of his duties as a manager, Defendant Rivet & Sons is now wholly owned and operated by Defendants Clint and Brent Rivet. Glynn Rivet no longer has any interest in Rivet & Sons, nor does he have any authority over its workers and is restrained from being in their presence by order of this Court.[28]

## II.    LEGAL STANDARD

Defendant respectfully submits this Court should stay this litigation, pending the outcome of WHD's investigation into the Secretary's allegations and after a final conference has been

---

[23] *Id.* at ¶ 18.
[24] *Id.*
[25] *Id.*
[26] *See* R. Doc. 12-2.
[27] *Id.* at 4, 5.
[28] R. Docs. 20, 21.

5

convened. Alternatively, should this Court proceed to the merits of the Secretary's allegations, Defendants respectfully submit the Secretary has failed to state a viable claim for relief, and his remaining claims against Defendants should be dismissed *with prejudice*.

### A. Motion for Stay Standard

It is well-settled that "[a] district court has the inherent power to regulate the flow of cases" and "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[29] This authority includes the district court's wide discretion to grant a stay in a pending matter.[30] In ordering a stay, a court must "weigh competing interests and maintain an even balance."[31] In determining whether to exercise its inherent authority to grant a discretionary stay of proceedings, Courts consider the following factors: "(1) any hardship imposed on the moving party by proceeding with the action, (2) any prejudice to the non-moving party if the stay is granted, and (3) interests of judicial economy."[32] In this case, all three factors militate heavily in favor of granting a stay of this litigation.

---

[29] *Amec Construction Mgmt., Inc. v. Fireman's Fund Ins. Co.*, No. 13-718, 2016 WL 7468808, at *1 (M.D. La. May 31, 2016) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Billiot v. Beavers*, No. 12-2946, 2015 WL 4397108, at *1 (E.D. La. July 13, 2015)); *United States v. Colomb*, 419 F. 3d 292, 299 (5th Cir. 2005) ("'A district court has inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936))).

[30] *Id.* (citing *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990); *Francois v. City of Gretna*, No. 13-2640, 2014 WL 1118091, at *1 (E.D. La. Mar. 20, 2014)).

[31] *See Landis*, 299 U.S. at 255; *see also United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977) ("The determination by a district judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.").

[32] *Neal v. Avondale Indus.*, No. 20-172, 2021 WL 2896082, at *3 (M.D. La. Jun. 16, 2021) (quoting *Maples v. Donzinger*, No. 13-223, 2014 WL 688965, at *2 (E.D. La. Feb. 21, 2014)); *Rizk v. DePuy Orthopaedics, Inc.*, No. 11-2272, 2011 WL 4965498 at *2 (E.D. La. Oct. 19, 2011) (stating that when determining whether to exercise its discretion to stay proceedings, "relevant factors for the Court to consider include: (1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated") citing *La. Stadium & Exposition Dist. v. Fin. Guar. Ins. Co.*, No. 09-235, 2009 WL 926982, at *1 (E.D. La. Apr. 2, 2009) (citation omitted))).

### B. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of the complaint.[33] The U.S. Court of Appeals for the Fifth Circuit has explained that "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[34] Although for purposes of Rule 12(b)(6) the allegations in the Complaint are assumed to be true, dismissal is appropriate if factual allegations do not "raise a right to relief above the speculative level."[35] "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss."[36] Moreover, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief."[37] In this case, the Secretary has failed to state a viable claim for relief, and his remaining H-2A retaliation claim must therefore be dismissed.

### III. ANALYSIS

The Secretary's Motion for a Temporary Restraining Order and Injunction have been dismissed without prejudice, and the Secretary's allegations regarding any purported OSHA violations have been amicably resolved through the appropriate administrative processes. Thus, only the Secretary's H-2A retaliation claims remain pending before this Court.[38]

---

[33] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[34] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[35] *Katrina Canal Breaches Litig.*, 495 F.3d at 205.

[36] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003).

[37] *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995); 5B Wright & Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL 3D § 1357 at 683 ("[T]he pleader must set forth sufficient information to outline the legal elements of a viable claim for relief or to permit inferences to be drawn from the complaint that indicate that these elements exist.").

[38] *See, e.g.*, R. Doc. 32 at 1 (Secretary's explanation of the case, noting that the only remaining claim is the alleged H-2A retaliation claim), 2 (same), 3 (Secretary's statement that the Secretary "is in the process of obtaining information from the relevant employees needed to calculate Complainant's damages that resulted from the alleged retaliation").

Having initiated (but never completed) an investigation into any alleged H-2A retaliation, the Secretary should be required to complete that investigation before any federal litigation commences in earnest. In light of these circumstances, the Secretary will not be prejudiced should this Court instruct his office to complete its investigation into the Secretary's allegations before litigating their validity in federal Court. Comparatively, absent a stay, Rivet & Sons will be forced to defend against the Secretary's allegations in both the administrative proceedings and in this parallel litigation, effectively depriving Rivet & Sons of the opportunity to amicably resolve the Secretary's claims through the administrative process. Finally, given that the administrative process exists to allow parties to avoid unnecessarily invoking this Court's jurisdiction and expending limited judicial resources, the final factor likewise militates in favor of staying these proceedings, pending the outcome of the Secretary's investigation, and only after the parties convene a final conference, which has a strong potential to moot the Secretary's claims in this case in their entirety.

Even if the Secretary had abided by his own administrative processes, the Secretary's allegations nevertheless fall far short of stating a claim for relief, and his Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6). The Secretary has failed to point to any conduct any H-2A employee engaged in for which he was allegedly retaliated against by Rivet & Sons that is considered activity specifically protected by the H-2A program. Thus, the Secretary's remaining claims against Rivet & Sons should be dismissed *with prejudice*.

**A. The Secretary's Claims Should be Stayed Pending the Outcome of His Investigation into His Allegations Against Rivet & Sons**

It is axiomatic that an enforcement action should not commence before it is determined through the administrative process what penalties or other directives should be enforced. This Court should stay this litigation, pending the outcome of the administrative process, which could

8

moot *all* of the Secretary's remaining claims in this case. Indeed, the Secretary's OSHA allegations have already resolved through this process during the pendency of this litigation. Ultimately, because Rivet & Sons will continue to suffer an undue hardship by being required to defend against the Secretary through his ongoing administrative investigation *and* this federal litigation, thereby depriving Rivet & Sons of its ability to voluntarily resolve the Secretary's outstanding claims; the Secretary will not be prejudiced should his office be required to complete its investigation into the Secretary's allegations and hold a final conference; and the interests of judicial economy will be best served by requiring the parties to complete the administrative process before resorting to any enforcement proceedings, Rivet & Sons respectfully requests this Court stay this litigation, pending the outcome of a final conference.

1. *Rivet & Sons will continue to suffer undue hardship should a stay not issue*

The Secretary is granted broad authority to initiate investigations pursuant to 20 CFR § 655.600. In turn, the DOL has promulgated a Field Operating Handbook, developed by the WHD, that dictates the procedure for the WHD's investigations. Pursuant to the Field Operating Handbook, WHD investigations are initiated by an initial conference, followed by a final conference during which the employer is provided notice of any violations and given an opportunity to voluntarily comply with the Department's findings.[39] Only when an employer refuses to comply with the Department's findings after its investigation has concluded is the matter referred to the Secretary for potential litigation.[40] This same procedure applies to investigations into alleged H-2A violations, such as those alleged herein.[41]

---

[39] *See* FOH 53b01, 53d; *see also Fact Sheet #44: Visits to Employers*, WAGE & HOUR DIVISION, https://www.dol.gov/agencies/whd/fact-sheets/44-flsa-visits-to-employers (hereinafter "Fact Sheet #44").

[40] *See* FOH 53b01, 53d; *see also Fact Sheet #44*.

[41] *See* FOH 53c00(e); *see also* 29 CFR 501.16.

9

Title 29 of the Code of Federal Regulations, Section 501.16 allows the Secretary to bypass the administrative process under two circumstances: when the Secretary seeks (1) "temporary or permanent injunctive relief," or (2) "an order directing specific performance of covered contractual obligations."[42] In this case, the Secretary's request for injunctive relief has been denied as moot, and the Secretary does not seek the enforcement of any contractual obligation.[43] Instead, the Secretary prematurely asks this Court to enforce yet to be determined findings related to alleged H-2A retaliation, before the Secretary's own investigation administrative processes have concluded. Rivet & Sons will continue to suffer an undue hardship, should it be required to defend against these parallel processes.

As the Secretary's own procedures require, the DOL's investigation must first advance through the administrative process, allowing the employer to either comply with the Secretary's investigative findings should any violation be found or contest those findings in federal court following a final conference. In this case, the Secretary chose to initiate an investigation pursuant to 20 CFR § 501.16(a), but ultimately filed suit without ever offering any findings as to the outcome of his investigation, convening a final conference, or issuing a determination letter. All the while, the Secretary has maintained his investigation, requesting (and receiving) documents through the investigative arm of the DOL, while likewise maintaining this action against Rivet & Sons in federal court. Because the results of the Secretary's underlying investigation into his allegations against Rivet & Sons has not yet concluded, and the Secretary's request for a TRO has resolved, the Secretary's remaining claims against Rivet & Sons should be stayed, pending the outcome if his investigation. Otherwise, Rivet & Sons will continue to be unduly prejudiced and

---

[42] 29 CFR § 501.16(b), (c).
[43] R. Doc. 23.

10

will be effectively deprived of the opportunity to amicably resolve the Secretary's claims through the appropriate administrative proceedings.

2. *The Secretary will not be prejudiced should this Court stay this litigation*

Given the WHD's position that it has retained the authority to investigate the validity of the Secretary's allegations, despite the fact that the Secretary has already filed suit against Rivet & Sons based on those exact same allegations, the Secretary will not be prejudiced by staying this litigation. Indeed, staying these proceedings will allow the Secretary to complete his investigation into his only remaining claim against Rivet & Sons. Notably, the WHD has continued to request and be given voluminous records concerning the Secretary's allegation, to which the Secretary plainly would not be entitled through this litigation in light of the fact that Rivet & Sons has not yet answered the Secretary's Complaint. Thus, the Secretary is afforded more rights under the administrative process than in the instant action, and would not be prejudiced should his office be required to complete its underlying investigation before proceeding with this enforcement action.

3. *The interests of judicial economy favor granting a stay of this litigation*

This Court should stay this litigation, to allow the "appropriate administrative proceedings" to be completed, which may obviate the need for any judicial intervention. In this case, the Secretary prematurely filed suit against Rivet & Sons before WHD completed its investigation into the very allegations the Secretary now makes in his Complaint. Despite having filed suit, the Secretary has continued his investigation into the H-2A retaliation claim he now pursues but has not yet issued any findings, convened a final conference with Rivet & Sons, or afforded Rivet & Sons the opportunity to comply with whatever enforcement order the Secretary might issue upon the completion of his investigation. Because the outcome of the Secretary's investigation may moot the final issue remaining before this Court (the same way the Secretary's other purported

11

causes of actions were resolved), issuing a stay of this litigation would best serve the interests of judicial economy.

Ultimately, because (1) Rivet & Sons will continue to suffer an undue hardship if forced to defend against the Secretary's parallel proceedings, effectively depriving it of the opportunity to amicably resolve the Secretary's complaints through the appropriate administrative process; (2) the Secretary will not be prejudiced by being required to complete his investigation into the validity of his claims against Rivet & Sons; and (3) the interests of judicial economy will be best served by requiring the parties to first conclude the ongoing administrative proceedings, which could moot the Secretary's Complaint entirely, Rivet & Sons respectfully requests that this Court exercise its discretion to stay this litigation, pending the outcome of the Secretary's investigation into his claims and after Rivet & Sons is afforded the opportunity to comply with the Secretary's findings, should any violation be found.[44]

### B. The Secretary Has Not Stated A Claim For Retaliation Under 8 U.S.C. 1188

Should the Court conclude that a stay of this litigation is not appropriate, Rivet & Sons respectfully submits that the Secretary's claims should be dismissed for failure to state a viable H-2A retaliation claim. To state a claim for H-2A retaliation, the Secretary must allege the H-2A employees at issue: (1) engaged in conduct statutorily protected by the H-2A program; (2) suffered some adverse employment action; and (3) a causal link exists between the H-2A employees' conduct and the employment action.

---

[44] *FEC v. NRA*, 553 F. Supp. 1331, 1333 (D.D.C. 1983) ("Accordingly, where the FEC fails or has not been afforded an opportunity to comply with the mandatory prerequisites to suit, an enforcement suit is premature, and the court, at a minimum, must stay the action pending cure by the FEC, or in certain cases dismiss the suit for want of subject matter jurisdiction." (citations omitted)).

The Secretary's Complaint offers only vague, conclusory allegations as to *what* conduct he contends the H-2A workers at issue engaged in that is protected by the H-2A program. Instead, the Secretary simply states the H-2A employees at issue "engag[ed] in numerous activities protected under the H-2A anti-retaliation provisions," based on their "request[ing] food and water" and "call[ing] the police and provid[ing] statements to report Glynn Rivet's violent threats with guns."[45] But Rivet & Sons cannot be held vicariously liable for Glenn Rivet's *ultra vires* actions, and making a police report is not considered activity protected by the H-2A program. Next, the only viable tangible or adverse employment action the Secretary points to is an alleged "constructive discharge." But even accepting the Secretary's allegations as true, the Secretary's own allegations show that the three H-2A workers *voluntarily* resigned from their employment with Rivet & Sons after deciding not to work for five consecutive days. Thus, their decision to resign from their employment cannot legally or factually be considered to have been a constructive discharge. As a result, the Secretary has failed to allege that the H-2A employees at issue engaged in any protected activity, nor has he alleged these workers suffered any actionable retaliation attributable to Rivet & Sons for having allegedly engaged in this activity.

Accordingly, the Secretary's remaining claims against Rivet & Sons should be dismissed *with prejudice*.

### a. Glynn Rivet's *ultra vires* actions cannot be attributed to Rivet & Sons

The Secretary vaguely alleges that Glynn Rivet's actions on June 8, 2021 constitute a violation of some unnamed discrimination statute. Although it appears the Secretary at least initially characterized Glynn Rivet's behavior as discriminatory, with all but his claims except for

---

[45] R. Doc. 1 at ¶ 21.

his H-2A retaliation claim having been resolved, the Secretary will likely now argue that Glynn Rivet's conduct was retaliatory.

Glynn's actions, which were not sanctioned by Rivet & Sons as evinced by Glynn's cursing both Clint and Brent during his tirade and his immediate withdrawal from the entity, are not attributable to the entity Rivet & Sons, regardless of whether the Secretary characterizes them as discriminatory or retaliatory. Moreover, Glynn's conduct did not result in a tangible employment action. Indeed, the Secretary's own allegations show that the Complainants did not return to work of their own volition for a full five workdays and that, after failing to come to work for five consecutive days, Clint reasonably informed these workers that they could either return to work or voluntarily separate from their employment with Rivet & Sons. Three of the four workers chose to depart, and Rivet & Sons reported their departure to the DOL, as it was statutorily required to do. That these workers' chose to return home instead of returning to work following Glynn's immediate removal from Rivet & Sons was not a constructive discharge.

Because Glynn's actions of June 8, 2021 fell *well* outside of the scope of his authority to run Rivet & Sons, did not result in a tangible employment action, and Rivet & Sons took prompt remedial action to correct and prevent any further actions taken by Glynn—and indeed deprived him of his ability to make *any* decisions as it related to the business—Rivet & Sons cannot be held vicariously liable for Glynn's actions on June 8, 2021.[46]

---

[46] *See, e.g.*, *Richmond–Hopes v. City of Cleveland*, 1998 WL 808222, *6-9 (6th Cir. 1998) ("Because the pre-discharge retaliation involved no tangible employment action, the city can assert an affirmative defense by showing that it exercised reasonable care to prevent and correct promptly any retaliatory behavior and that the plaintiff unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer or to avoid harm otherwise."); *Scalone v. Home Depot U.S.A., Inc.*, No. 06-492, 2007 WL 9723807, at *7 n.9 (M.D. Fla. Sept. 17, 2007) ("Similarly, Defendant may benefit from the application of the *Faragher-Ellerth* defense because the retaliation is linked to her complaint against Fines, not the alleged harassment." (citing *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1303, 1307-08 (11th Cir. 2007)); *Tynes v. Shoney's Inc.*, 867 F. Supp. 330, 333 (D. Md. 1994) (holding that a supervisor's conduct of allegedly shoving the plaintiff employee could not be attributed to employer); *see also Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442 (5th Cir. 2014) (explaining that "the employer

14

> b. Making a police report is not considered protected activity under the H-2A program

With respect to his retaliation claim against Clint Rivet, the Secretary contends the Complainants engaged in activity protected under the H-2A program, citing to 29 C.F.R. § 501.4 and 20 C.F.R. § 655.135(h) in support of his argument.[47]  Based on these two provisions, the Secretary contends that filing a criminal complaint constitutes protected activity under the H-2A program.  The Secretary is incorrect.

Specifically, 29 C.F.R. § 501.4 prohibits "discrimination" against a worker who "Filed a complaint *under or related to 8 U.S.C. 1188 or the regulations in this part*."  Similarly, 20 C.F.R. § 655.135(h)(1) prohibits "discrimination" against a worker who "Filed a complaint *under or related to 8 U.S.C. 1188*, or this subpart or any other Department regulation promulgated thereunder."  But filing a police report is not an activity "falling under" or "related to" 8 U.S.C. § 1188, which details the circumstances under which an employer qualifies for the admission of temporary H-2A workers, nor does it fall under any regulation promulgated under that subpart.  Accordingly, filing a police report is not activity protected by the H-2A program.

Allegations of workplace violence in the Title VII context is particularly instructive here. Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against any of its employees: (1) because she "has opposed any practice made an unlawful employment practice by this subchapter," namely Title VII; or (2) because she "has made a charge, testified,

---

may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided") (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 453 (2013)); *see cf. Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646–47 (1999) (holding that a school district Cannot be liable under Title IX absent being given actual notice and responding with deliberate indifference); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998)  (requiring proof of actual notice and deliberate indifference before a school district is liable under Title IX for a teacher's sexual harassment of a student).

[47] R. Doc. 3-1 at 13.

15

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[48] But simply opposing *any* employment practice or filing *any* complaint without regard to the nature of that complaint does not, in and of itself, deem that specific activity protected by Title VII. For example, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion]' . . . because of . . . sex [or race]."[49] "Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII."[50] Hence, "[v]erbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's gender [or race]."[51] Much like Title VII, an employee's general complaints of workplace violence are not considered activity protected by the H-2A program.[52]

Accordingly, the Secretary's retaliation claim against Rivet & Sons, as well as individual Defendants Clint and Brent Rivet fails on this basis alone and should be dismissed *with prejudice*.

## IV. CONCLUSION

For the foregoing reasons, Rivet & Sons, LLC, Clint Rivet, and Brent Rivet respectfully request this Court stay the Secretary's claims against them, pending the resolution of the

---

[48] *Crawford v. Metro. Gov't of Nashville & Davidson*, 555 U.S. 271, 275 (2009) (citing 42 U.S.C. § 2000e–3(a)).
[49] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998);
[50] *Davis v. City of Newark*, 417 F. App'x 201, 202–03 (3d Cir. 2011) (citing *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3rd Cir. 2006)).
[51] *Koschoff v. Henderson*, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000), *aff'd sub nom., Koschoff v. Runyon*, 35 F. App'x 357 (3d Cir. 2002); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) ("[A] general complaint of unfair treatment does not translate into a charge of [retaliation]."). Moreover, citing one statue is not a sufficient substitute for citing another. For example, it is well-established that Title VII protects employees and job applicants from employment discrimination based on race, color, religion, sex and national origin. *Plaisance v. Airgas-Gulf States, Inc.*, No. 07-8440, 2008 WL 1730535, at *2 (E.D. La. Apr. 10, 2008). Thus, "it would be futile" for example, "for [a] plaintiff to bring a Title VII claim against defendant for age discrimination because Title VII does not protect against age discrimination." *Id.*
[52] To the extent the Secretary might point to OSHA regulations as forming the basis of his retaliation claim, not only has the Secretary's OSHA claims been resolved, OSHA simply does not cover instances of alleged workplace violence. There are currently no specific OSHA standards for workplace violence; instead, instances of alleged gun violence at the workplace falls under the criminal law, which OSHA does not enforce. *See, e.g.*, *Workplace Violence*, OCCUPATIONAL SAFETY AND HEALTH ADMIN., https://www.osha.gov/workplace-violence.

16

Secretary's investigation into the very allegations he asserts herein is concluded, findings are issued, and a final conference is convened. Alternatively, Rivet & Sons respectfully move this Court to dismiss Plaintiff's claims with prejudice for failure to state a claim, issuing an order directing the WHD to immediately cease its investigation into the same and issue a finding of no violation.

Respectfully submitted,

**PHELPS DUNBAR LLP**

*/s/ Brandon Davis*

Brandon Davis (La Bar #29823)
Walt Green (LA Bar #27812)
Stephanie M. Poucher (La Bar #37263)
Clerc H. Cooper (La Bar #38170)
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-566-1311
Facsimile: 504-568-9130
Email: brandon.davis@phelps.com
Email: walt.green@phelps.com
Email: stephanie.poucher@phelps.com
Email: clerc.cooper@phelps.com

PD.36315687.2

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2021, the foregoing was electronically filed and served on all counsel of record through the Court's CM/ECF system.

*/s/ Brandon Davis*
Brandon Davis

PD.36315687.2